UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL HOOTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:23-cv-00191-JPH-DML |
| ) | |
| RICHARD BROWN, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Hooten is an Indiana Department of Correction ("IDOC") inmate housed at Wabash Valley Correctional Facility ("Wabash Valley"). In this action, he alleges that Defendants held him in segregation at Wabash Valley for an extended period without meaningful review, in violation of his Fourteenth Amendment rights.

Defendants have moved for summary judgment. Dkt. 56. They advance several arguments as to why they are entitled to summary judgement, including that Mr. Hooten was afforded meaningful, periodic review of his placement in administrative segregation. *Id.* The undisputed record supports this argument, and no reasonable trier of fact could reach a different conclusion. Therefore, the Court does not reach the Defendants' remaining arguments. For the reasons below, that motion, dkt. [56], is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and,

1

instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Hooten and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The parties[1]

Mr. Hooten was transferred from Pendleton Correctional Facility to Wabash Valley on April 25, 2019, after he assaulted a staff member, and was housed in disciplinary segregation ("DRSH") at Wabash Valley for one year. Dkt. 63 at 2. On April 25, 2020, Mr. Hooten's classification changed from disciplinary segregation to administrative segregation. Dkt. 62-1 at 1. On March 9, 2021, he was recommended for release from administrative segregation and transfer to any level four general population facility. Dkt. 62-2 at 17.

Defendant Jerry Snyder was the Unit Team Manager at Wabash Valley. Dkt. 63 at 1.

Defendant Jack Hendrix was the Executive Director of Classification for the IDOC. Dkt. 58 at 7.

### B. Mr. Hooten's placement in administrative segregation and review of that placement

---

[1] In his reply to Defendants' motion for summary judgment, Mr. Hooten relinquished all claims against Defendant Richard Brown, IDOC Executive Director. Dkt. 63 at 4. The Court therefore declines to discuss the claim against him further.

On April 7, 2020, Acting Warden Kevin Gilmore recommended to IDOC Executive Director Michael Osburn that Mr. Hooten be assigned to Department Wide Administrative Restrictive Status Housing ("ARSH") based on his serious conduct history, recent serious conduct, and recent staff assault with injury. Dkt. 62-2 at 11. On April 17, 2020, Mr. Hooten's transfer to administrative segregation was approved. *Id.* at 27.

Mr. Hooten submitted a classification appeal in April 2020 upon the determination that he would be moved to administrative segregation and requested that he be kept under review for only a short while before being released to general population as soon as possible. Dkt. 62-2 at 59. Executive Director Jack Hendrix denied this appeal on May 11, 2020, explaining that Mr. Hooten's placement was appropriate based on guilty findings in the two Class B conduct reports in January 2020, as well as an "unwillingness to follow the rules and regulations." *Id.* at 37.

For the first eight weeks that Mr. Hooten was in administrative segregation, he received reviews every seven days from May 1 to June 19, 2020. Dkt. 57-1 at 24–25, 42, 49–53. These reviews largely remained the same with only the number pertaining to the day of review changing (7-day; 14-day; 21-day, etc.). Each dictated that Mr. Hooten was to remain in administrative segregation based on the following rationales: threat to facility security, additional observation needed, overall negative adjustment, recent negative adjustment, and other. *Id.* Mr. Hooten refused to sign each review. *Id.* Mr. Hooten added to the comments of his May 22, 2020: "Its been over a year since

4

I got the A-102 5-16-19 when will it be off my recent history?" (errors in original).  *Id.* at 53.  However, each of these reviews shows that he had two other conduct violations in January 2020.  *Id.*

Mr. Hooten submitted a second classification appeal in June 2020, arguing that it would benefit his mental health to be transferred to Indiana State Prison.  Dkt. 57-1 at 34.  This classification appeal was reviewed and denied by a non-party because this matter was "addressed by a prior classification appeal response."  *Id.* at 33.

Mr. Hooten then began receiving 30-day reviews and behavior modification plans from June 30 to December 10, 2020.  *Id.* at 18, 21–22, 32, 38, 40.  While many of these reviews mimicked the language and rationale from the 7-day reviews, the October 29, 2020, review revealed that Mr. Hooten had been found guilty of a new conduct violation that took place on September 10, 2020.  *Id.* at 38.  Additionally, over the course of these reviews, Mr. Hooten was provided with Brief Intervention ToolS ("BITS") and guides to help him handle situations differently.  *Id.* at 21 (July 31, 2020), 32 (December 10, 2020), 40 (September 30, 2020).  Again, Mr. Hooten refused to sign any of these reviews.

In August 2020, Wabash Valley staff conducted a classification hearing on Mr. Hooten's placement in ARSH which included input from a Casework Manager, Custody Manager, OII/STG Coordinator, Unit Team Manager Snyder, Deputy Warden and the Warden.  *Id.* at 81–82.  Specifically, Unit Team Manager Snyder cited Mr. Hooten's two serious recent conduct violations that he received from arranging financial transactions to the families and associates

5

of other offenders, in conjunction with his previous violent staff assault that led him to be placed in DRSH. *Id.* at 82. None of the individuals who participated in this review recommended Mr. Hooten for release from ARSH, also citing his need to complete programming to be successful in general population. *Id.* at 81–82. Mr. Hooten then submitted his third classification appeal, which was reviewed and denied by a non-party because this matter was "addressed by a prior classification appeal response." *Id.* at 26.

In September 2020, Wabash Valley staff conducted a classification hearing in which it was determined that Mr. Hooten would remain in ARSH. *Id.* at 39. Emails between staff at Wabash Valley show that Unit Team Manager Snyder reported the result of this classification hearing to multiple individuals so that they could advise Mr. Hooten and update his case notes. Dkt. 62-3 at 3. The breakdown of recommendations by individuals, including Unit Team Manager Snyder, was not provided to the Court by either party. On the same day, Mr. Hooten was caught disposing of intoxicants before a cell search, a conduct violation for which he was later found guilty. Dkt. 57-2 at 1–2.

Mr. Hooten completed a written review in January 2021 in which he reflected on his time in segregation, spoke of his future goals, and requested to be transferred to Indiana State Prison to be closer to family with the ability to receive visits. Dkt. 57-1 at 3–4.

In February 2021, Wabash Valley staff conducted an annual classification hearing. *Id.* at 79–80. While the Casework Manager, Custody

6

Manager, and OII/STG Coordinator all declined to recommend that Mr. Hooten be moved out of ARSH, Unit Team Manager Snyder, the Deputy Warden, and the Warden all recommended his return to general population. *Id.* Unit Team Manager Snyder's comments included that Mr. Hooten had not engaged in staff violence since 2019, had participated in anger management and substance abuse courses, and had realistic goals he would like to achieve. *Id.* Based on these findings, Executive Director Brown recommended Mr. Hooten's release to general population at any level four facility. *Id.* at 105–106. Mr. Hooten was placed back in general population at Wabash Valley in March 2021. Dkt. 62-1 at 1.

Mr. Hooten appealed this decision, requesting transfer to Indiana State Prison to be closer to family. Dkt 57-1 at 8. Executive Director Brown denied this appeal on the basis that his transfer to a level four general population facility was appropriate. *Id.* at 7.

### III. Discussion

Mr. Hooten alleges that Defendants violated his constitutional due process rights under the Fourteenth Amendment when they kept him in administrative segregation for an extended period without meaningful review. The Defendants seek summary judgment, arguing that Mr. Hooten was provided with periodic and meaningful reviews throughout his time in ARSH.

"Inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or

7

investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). "Of course, administrative segregation may not be used as a pretext for indefinite confinement of an inmate." *Hewitt v. Helms*, 459 U.S. 460, 477, n.9 (1983). "Prison officials must engage in some sort of periodic review of the confinement of such inmates." *Id.*

Due process does not require periodic reviews to be formal or adversarial. *Id.* at 472. Inmates are not ordinarily entitled to present evidence or statements. *Id.* at 477 n.9. Rather, periodic reviews must be "meaningful," which is to say they must be "open to the possibility of a different outcome." *Isby v. Brown*, 856 F.3d 508, 527–28 (7th Cir. 2017).

Similarly, due process does not require custodians to conduct their periodic reviews according to rigid timelines. "The periodic review need only be sufficiently frequent that administrative segregation does not become 'a pretext for indefinite confinement of an inmate.'" *Westerfer v. Neal*, 682 F.3d 679, 686 (7th Cir. 2012) (quoting *Hewitt*, 459 U.S. at 477, n.9). Otherwise, the frequency of periodic reviews "is committed to the discretion of the prison officials." *Isby*, 856 F.3d at 525.

In response to the motion for summary judgment, Mr. Hooten attests that, as indicated by his case notes, he "ostensibly received review" of his placement in segregation, but that these reviews were perfunctory and meaningless—ultimately repeating the exact language used in earlier reviews and failing to evaluate current circumstances. Dkt. 63 at 10–11. While the 7-day reviews were perfunctory, these are not the only reviews Mr. Hooten

8

received—the Defendants have designated evidence that the reviews he received beginning with July 31, 2020, provided the possibility of a different result. *See Isby*, 856 F.3d at 527–28 (periodic reviews must be "meaningful," which is to say they must be "open to the possibility of a different outcome."); dkt. 57-1 at 21. Although the 30-day review forms were similar to the 7-day review forms, they provided additional information regarding new conduct violations along with Mr. Hooten's behavior plans, indicating that completion of these plans could result in release from segregation. *See, e.g.*, dkt. 57-1 at 21 (BITS decision making completed); 32 (provided BITS Carey e-guide and anger tool 1); 38 (found guilty of conduct violation); and 40 (pending conduct violation and given a packet review).

      The designated evidence further reflects that Mr. Hooten was provided with meaningful reviews by way of classification hearings. When Mr. Hooten submitted his first classification appeal, it was denied by Executive Director Jack Hendrix based on the fact that he was found guilty of two Class B conduct violations within the last five months and did not follow IDOC rules. For the August 2020 hearing, Unit Team Manager Snyder, along with all five other individuals who were contributing to the hearing, did not recommend Mr. Hooten's release from ARSH because of his serious recent conduct violations, previous staff assault, and need to complete programming to prepare himself for success in general population. Mr. Hooten contends that Unit Team Manager Snyder did not personally recommend him for release to general population during the September 2020 hearing. Dkt 63 at 3. However, the

only designated evidence related to this is an email from Unit Team Manager Snyder informing others of the result of the hearing—a denial based on the former staff assault, and recent conduct violations.  Following this, Mr. Hooten was found guilty of yet another conduct violation.

As part of his annual review in February 2021, six individuals, including Unit Team Manager Snyder, contributed their thoughts on the possibility of Mr. Hooten being released to general population.  While three individuals continued to argue that Mr. Hooten should remain in ARSH, three deviated from this perspective, including Snyder, who believed that Mr. Hooten had been rehabilitated during his time in ARSH and was ready to succeed in general population.  On balance, the multiple reviews over the course of his time in ARSH provided insight into Mr. Hooten's behavioral progress, history of conduct violations, ability to succeed in general population, and goals.

Mr. Hooten received at least six meaningful reviews while housed in ARSH.  Four meaningful reviews stemmed from the following 30-day reviews, which reflected updates as to conduct issues that arose during that review period, and provided insight into what tools and guides were supplied to Mr. Hooten: July 31, 2020; September 30, 2020; October 29, 2020; and December 10, 2020.  *See* dkt. 57-1 at 21, 40, 38, 32, respectively.  Two originated from the following classification hearings in which six individuals provided insight as to Mr. Hooten's serious recent conduct violations, previous staff assault, programming needs and progress, rehabilitation, and readiness to succeed in a

10

general population environment: August 2020 and February 2021.  *See id.* at 81–82, 79–80, respectively.

As to that initial timeframe during which Mr. Hooten did not receive meaningful reviews, that was only three months, during which time no meaningful review was required.  *See Westerfer*, 682 F.3d at 679, 686 (quoting *Hewitt*, 459 U.S. at 477, n.9) (finding no established timeline for periodic review except that, the review "need only be sufficiently frequent that administrative segregation does not become 'a pretext for indefinite confinement of an inmate.'"); *see also Isby*, 856 F.3d at 525 (frequency of periodic review is otherwise "committed to the discretion of the prison officials.").  As to the bulk of his time in ARSH—a period of approximately eleven months—the designated evidence shows that he received meaningful reviews.

In short, it is undisputed that the Defendants did conduct periodic, meaningful reviews of Mr. Hooten's placement in segregation.

They are therefore entitled to summary judgment on his claims.

## IV.
## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment, dkt. [56], is **GRANTED**.  The **clerk is directed** to enter final judgment consistent with this order, the screening order, dkt. 20, and the order granting defendants' partial motion to dismiss, dkt. 42.

**SO ORDERED.**

Date: 9/29/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

11

Distribution:

All electronically registered counsel